The opinion of the Court was delivered by
Whitner, J.
The report of the presiding Judge very succinctly sets forth the facts of this case. A majority of this Court are of opinion that the defendant was concluded from objecting to the plaintiff’s title as well upon principle as authority. But it is thought that very grave consequences result from such a conclusion: — the disseizure of a citizen of his freehold by a mode never before having legal sanction in this State and in the very face of his constitutional guaranty. If the very point has not been settled, almost the whole argument has been well presented by Wardlaw, J. which leads to this judgmsnt, in the case of Gates vs. Irick, (2 Rich. 593). A plain and simple statement will be attempted to vindicate the Court from any charge, or proper apprehension even, that the sacred right of trial by jury as heretofore used has been in any manner impaired, or this defendant disseized of his freehold otherwise than by the judgment of his peers or by the law of the land, having reference to any construction heretofore given to these terms in the Constitution by our predecessors in the Courts of this State.
*109 The power to partition lands in this State is of great antiquity, as well in the Common Pleas as in Equity. For ceitain purposes moving the Legislature, as recently as 1824, it was thought wise to create a concurrent jurisdiction in the courts of. Ordinary to a limited amount. I have not understood that any general objection exists to the exercise of this power by the Judges in either of these courts.
My first inquiry is, if a proceeding be had in either of the three courts upon a case made, with the proper parties duly summoned and making default, — prosecuted to judgment or the final order for sale according to prescribed forms, — followed up by an actual sale, — compliance by the purchaser and titles delivered,— would either of the parties to such a proceeding be permitted to contest the title of the purchaser, with an allegation of exclusive paramount title in himself? When called upon to shew cause why partition should not be made, though it might be a suit involving his title to the land, yet, failing to make his defence at the proper time, such a judgment, I submit, would conclude him. The purchaser would represent the title of the ancestor, and succeed to all its immunities — As a judgment between the parties upon the same subject matter, if it did not constitute a bar to such a claim, every thing appertaining to such titles may be regarded as unsettled and uncertain. Such is the doctrine of Smith vs. Smith, (Rice, 232). Such principles, certainly, and such precedents, doubtless, are older than he Constitution of 1790, and entirely consistent with its sanctions and guarantees.
My next inquiry is, whether the transfer of a concurrent jurisdiction, to a limited amount, to the court of Ordinary, creates any difficulty in the application of the same principle in a like case. I do not so understand the argument on which this defendant’s rights are based. To hold otherwise, would be utterly subversive of the validity of the proceeding, and amount to a virtual denial of the entire jurisdiction of that court in cases of partition.
But it is insisted that, when the party summoned appears and *110 objects with an allegation of exclusive title, then the power of the Ordinary is at an end and the case must be dismissed. This involves the questions whether the jurisdiction of the Ordinary depends alone on the consent of the parties, or whether, thereby, he is restrained by other provisions to be found, either in the Acts of Assembly conferring jurisdiction, or in the supreme law embodied in the Constitution.
The Act of 1824, re-enacted in 1839, (11 Stat. 44,) “ concerning the office and duties of Ordinary,” is explicit. “ If, upon the return of the original summons,” &c. “ there shall, in the opinion of the Ordinary, be no good cause shewn why a division or sale oí the premises should not take place, he shall proceed to determine,” &c. This is the instruction, and there seems at this precise point to be some difference of opinion. If the parties are in default, and the applicant has made the prima facie shewing, without question, “ no good cause” being shewn to the contrary, there is no restraint imposed and the duty is manifest. But when one of the parties summoned appears, and alleges a larger interest than is admitted, or an exclusive title as to a part or the whole, does that mere allegation ipso fado shut out all further investigation on the part of the court and end the suit ? This, at least, is not the reading of the Act, and in the language of Wardlaw, J. in Gates vs. Irick, before cited, and so full to this point, I need only repeat: — “ That the Ordinary’s power is not made to rest upon the consent of the parties, for he is required to proceed in cases where infants and married women are parties, and, by a formal consent entered, may bind absent persons. He is required to form an opinion concerning the causes which may be shewn against a partition which is applied for, and to act upon that opinion. No distinction is made between adverse title set up by a party and other causes. If a serious opposition of title should stop him, then must a mere pretence too, for he only can judge whether a claim be one or the other.” Mark the distinction between this and other legislation to which reference may be made. Because a mere question of title is raised, he is not estopped from all further action by *111 the terms of the statute, as in the case even of a law Judge within the summary jurisdiction; nor is he thereupon directed to refer the case to a Court of Common Pleas that an issue may be made up to try the fact; nor is he furnished with a jury to aid his decision; but in all cases his opinion must be formed on the cause shewn, and if, in his judgment, it be not good, he is to proceed. It is in vain to say, in general terms, that wherever a question of title is presented he is estopped. For, as is said elsewhere, “ the title to land is necessarily involved in every such case, whether the decision be made upon default or after consent had, and whether with or without consent.” The plain intendment of the Act, as collected from the phraseology used, was to constitute the Ordinary a judge of the law and fact, in the cases within his jurisdiction, for purposes of partition.
I proceed then to the next inquiry, whether, although the Ordinary shall overrule the defence as to the proceedings before him, and order the sale of the land, the trial by jury as heretofore allowed is in any manner impaired, for to every citizen must be secured this sacred shield. If the Act had prescribed that, on such an issue being tendered before the Ordinary, either party should be entitled to a jury to try the fact, then, certainly, there would have been no ground for apprehension or objection; or if it can be shewn that, because the Ordinary “ proceeds to determine,” the party is thereby excluded from this great constitutional safeguard, the objection may still be well taken. So far from it, the very reverse is the fact, and the Legislature, looking to this right of the citizen, provides, in terms broad enough, in all conscience, to meet every guaranty, by enacting, (Act 1839, sec. 13,) “If any person or persons shall think themselves aggrieved by any judgment, sentence, decree, determination, denial or order of any of the courts of Ordinary, it shall and may be lawful for such person to appeal therefrom to the Court of Common Pleas or Equity,” &c. The party is to file a suggestion, post a rule, and such issue shall be made up, in law or fact, as may be necessary or proper, and shall be tried according to the usage and practice of the said court. Is not this plain, *112 direct, ample ? The Legislature has thereby re enacted and reassured the party of his right to jury trial. The ruling of this Court, therefore, in no way substitutes the discretion of an Ordinary for the verdict of a jury; and I cannot perceive how it is apprehended that the practice here vindicated shall in any manner infringe the constitutional guaranty of trial by jury: — and, let it be borne in mind too, that I in no way maintain that because an appeal is given from an inferior to a superior tribunal, that hence jurisdiction is conferred on the former. Jurisdiction is given by the Act, and from that source the power in question is derived. The right of appeal removes all objection to its exercise on the grounds here taken.
There remains a further point to be settled, which, however, follows as a corrollary from what has been shewn. In the case for partition, the Ordinary having ordered the land for sale, and this judgment being acquiesced in, the defendant being a party to that proceeding, is bound by it as though he had made default originally. The judgment, proceeding from a competent tribunal, authorizing the sale of land, and the proceedings remaining of force unless avoided in the manner pointed out by law,— the purchaser being invested with the title of the parties to that proceeding, — this defendant is concluded thereby, and should not now he permitted to controvert that right. The principle may operate hardly upon the particular case before the Court. Vigilance is indispensible to the protection of right, and he who sleeps when his rights are invaded,, must refer his discomfiture to his own indifference and neglect, rather than to the operation of a sound and wholesome general rule. The defendant well knew his rights were.drawn in question; and by the case of Gates vs. Irick, was distinctly advertised of the course of proceeding indicated by the Court. Acting as he did, he might well be regarded as having withdrawn all further contest and as admitting thereby the correctness of the Ordinary’s judgment that his defence was a mere pretence.
That caution which, it is said, so frequently induces the Chancellor to send such questions, in like cases, to the courts of *113 law, on a preliminary issue, I submit, in no way weakens (he positions I have taken. The jury trial cannot he secured on appeal as a matter of right, and hence the concession before final judgment. Yet my information of the usage and practice of the Court of Equity does not enable me to say that the mere assertion of title has ever been regarded as interposing an obstacle lo the exercise of jurisdiction. If a pretence may be disregarded in the Court of Ordinary and also in the Court of Equity, which I understand to be conceded, then the conclusion we have attained, in my humble judgment, is authorized.
The case of White vs. Kendrick, (1 Brev. 469,) is thought to settle a question analogous to that raised here. I will not add to an opinion already protracted by stopping to review and compare these circumstances. If I have not already illustrated the difference, I could scarcely hope to do so. One remark 1 will submit, however, that if that case be authority applicable to this, it would eradicate, it seems to me, the whole jurisdiction of the Ordinary in all cases of partition.
The motion for a new trial is granted.
Evans, Warm.aw, Frost and Withers, JJ. concurred.